IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES O. TUCKER,

                Petitioner,

v.                                        OPINION and ORDER

NICHOLAS REDEKER,                        18-cv-825-wmc

                Respondent.

---

Petitioner James O. Tucker, who is represented by counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2015 conviction for first-degree reckless injury. Tucker pleaded guilty to the charge of conviction, but he now contends that he would not have done so if trial counsel had filed a motion to suppress. Tucker now argues that counsel's failure to do so violated his Sixth Amendment right to effective assistance of counsel, and he seeks to vacate his conviction and sentence, withdraw his plea, and suppress the state's evidence against him. As explained below, Tucker's petition must be denied because he has failed to establish that in rejecting his claims and affirming his conviction, the Wisconsin Court of Appeals unreasonably applied clearly established federal law or based its decision on an unreasonable interpretation of the facts.

BACKGROUND[1]

A. Criminal conviction for first-degree reckless injury

In Fond du Lac County Case No. 2014CF550, Tucker was charged with first-degree reckless injury for shooting someone in the leg during a fight outside an apartment complex in Fond du Lac. On the date of the incident, police arrived at the apartment complex in response to reports of gun fire and found an individual who had been shot in the leg. From witnesses of the shooting, the police learned that there had been an argument involving a group of people in a parking lot, and that a man wearing an orange shirt had fired the gun and fled with a group of people into a nearby apartment. At least one witness also gave a description of the shooter, including his height, build, hair color, skin color, and clothing, as well as stating that she recognized one of the men in the group (though not the shooter) and knew that he had a twin brother.

A SWAT team assembled around the apartment building where the shooter and his companions were suspected to be holed up and directed the individuals inside the apartment to come outside. Those individuals complied, and were arrested and interrogated, including Tucker. A resident of the apartment, Sonya Coleman, also gave police permission to enter, confirm that no one else was inside, and retrieve a gun. After police performed a protective sweep of the apartment and located the gun, they continued their search and an officer discovered an orange shirt in a closet that matched the description given by several witnesses of the shirt worn by the shooter. Later, Tucker was

---

[1] The following facts are taken from Tucker's petition and the state court records provided by Tucker and the state.

2

shown a photo of the orange shirt, which he eventually admitted to having worn, and the victim's brother identified Tucker as the shooter from a photo lineup.

The state charged Tucker with attempted first-degree homicide, first-degree reckless injury, and aggravated battery, all by the use of a dangerous weapon. Tucker retained Attorney Seven Kohn as trial counsel, who decided not to move to suppress evidence derived from the warrantless search of the apartment. Instead, he negotiated a plea agreement under which Tucker was permitted to plead guilty to a single, amended count: first-degree reckless injury. For that offense, the state circuit court imposed 11 years of imprisonment to be followed by six years of extended supervision.

### B. Postconviction proceedings in circuit court

Appointed by the state public defender's office, postconviction counsel filed a motion in circuit court to withdraw Tucker's guilty plea, contending that Attorney Kohn was ineffective for failing to file a motion to suppress evidence obtained as a result of: (1) the latter part of search of the apartment, because it exceeded the scope of Ms. Coleman's consent; and (2) Tucker's illegal arrest. The trial court held an evidentiary hearing on that motion, at which defense counsel called 10 witnesses: Tucker, Attorney Kohn, Coleman (resident of apartment), Sutton (Coleman's boyfriend and the other resident of the apartment), Coleman's adult son (who had invited Tucker into his mother's apartment), and five of the police officers involved in responding to the original report of a shooting.

Attorney Kohn testified that he could not recall the specifics of any conversation with Tucker and had not taken any notes to make a record of the specifics of any

conversation. However, Kohn did recall reviewing the discovery with Tucker, and discussing "different options that we had," including to "fight the case, file motions, and go to trial." (Dkt. #9-9, at 7–8.) Kohn also said that it was "fair" to say that he told Tucker, "any motion [he] filed would not be dispositive, meaning it wouldn't make the case go away," as he recalled there being "evidence other than the fruits of a search that implicated Mr. Tucker," including Tucker's own voluntary statement to the police and his "identification by a witness." (*Id.* at 7–9.) Specifically, Kohn recalled that there were witnesses who tied the orange shirt to the shooter and who identified Tucker as the man wearing the orange shirt. (*Id.* at 24–25.) He also agreed that if Tucker had wanted to contest everything and go to trial, Kohn would have followed Tucker's wishes within the bounds of his ethical obligations. (*Id.* at 32.)

Kohn further testified that Tucker and he negotiated with the state by offering Tucker's assistance to law enforcement in locating the gun used during the incident in exchange for the state's making a positive sentencing recommendation. (*Id.* at 20–21.) Kohn stated that the decision to negotiate and accept the plea deal was a strategic one, partially to get the state to drop certain charges and enhancers that greatly reduced Tucker's exposure.[2] He also stated that in his experience, filing pretrial motions can jeopardize plea negotiations.

---

[2] Tucker had been charged initially with: attempted first-degree intentional homicide with use of a dangerous weapon, a Class B felony with a 65-year maximum; first-degree reckless injury with use of a deadly weapon, a Class D felony with a maximum fine of $100,000 and imprisonment of 30 years; and aggravated battery with use of a deadly weapon, a Class E felony subjecting him to up to $50,000 in fines and 20 years' imprisonment. In all, Tucker faced 115 years' imprisonment and up to $150,000 in fines based on these charges and their enhancers. He ultimately pleaded guilty to a single count of first-degree reckless injury with no dangerous weapon enhancer, which exposed

In contrast, Tucker testified that Kohn did not discuss potential suppression motions with him, and if Kohn had, he would have wanted him to file the motions, and if they had succeeded, he would have insisted on going to trial. (*Id.* at 41–43.) Tucker expressed the belief that if the orange shirt and his statement acknowledging having worn the shirt had been suppressed, "the state would have no case" against him (*id.* at 45), although he later conceded that the state would still have had eyewitnesses identifying him as the shooter. (*Id.* at 50.) Tucker also conceded that he had all of the discovery available to him, and that Kohn had discussions with him about how to proceed with the case. (*Id.* at 51.) Finally, Tucker testified that he did not want to take the plea, but also did not have sufficient money to pay Kohn to represent him at trial and wanted to continue with him, rather than switch to a public defender. (*Id.* at 52.)

After Tucker's testimony concluded, the state questioned Tucker's standing to challenge the search of Coleman's apartment, and the court permitted defense counsel to call additional witnesses to attempt to establish Tucker's standing to challenge the search. Defense counsel first called Sonya Coleman, who testified that her children and Tucker had her implied permission to stay over in the apartment on the night of the incident, and that she considered her children's friends to be her guests. (*Id.* at 60–61, 67–68.) The state also called Coleman's boyfriend, Sutton, who testified that Tucker had his implied permission to spend the night, although he did not know him and had not known he was

---

him to up to 25 years additional imprisonment and $100,000 in fines. The remaining counts were dismissed and read in, and the court sentenced him to 11 years of initial confinement and six years of extended supervision, with no fines.

in the apartment on the night of the incident until the police arrived at the apartment. (*Id.* at 77, 79.)

Defense counsel then argued that Tucker had standing to challenge the search of Coleman's apartment because he was an overnight guest there. The state disagreed, and so did the court. The court held that Tucker lacked standing because: he had not been in the apartment for long; he was not previously acquainted with Coleman or Sutton and neither were originally expecting him to stay that night; and the obvious purpose of the visit was to avoid police detection. (*Id.* at 108–113.) Based on this ruling, the court barred Tucker's postconviction counsel from eliciting further testimony about the search of the apartment, including who conducted it, on what basis they considered it legal, and what evidence law enforcement recovered. Counsel was permitted to present evidence about Tucker's arrest and statement.

The court then issued an oral ruling denying Tucker's postconviction motion. Although the court had concluded that Tucker lacked standing to challenge the search of Coleman's apartment, the court also addressed the merits of Tucker's claim that his counsel was ineffective for failing to file a motion to suppress the fruits of the search. In particular, the court found that: Attorney Kohn was credible, and he had discussed a potential suppression motion with Tucker, including a motion to "suppress the shirt, the gun, [and] his statement." (*Id.* at 184–85.) To the extent that Tucker's testimony contradicted Kohn's, the court found him "not credible and self-serving," and that he had agreed to plead guilty after Kohn fully informed him about suppression options, especially because the plea deal reduced his potential sentence considerably and Tucker could not afford to

6

continue to a trial with Kohn and did not want a public defender. (*Id.* at 185–87.) Finally, the court concluded that Kohn had made a reasonable strategic decision to pursue plea negotiations because the suppression motion would not have disposed of the case and was "not likely to make the defense case any better at trial than it was at the time anyway." As to the reasonableness of Kohn's strategic decision, the court emphasized the fact that eyewitness statements describing the shooter matched Tucker's description and the photo lineup identification would not have been suppressed. (*Id.* at 185, 188.) Thus, the court concluded that Tucker had not met his burden of showing that he would have insisted on going to trial had Attorney Kohn informed him of a potential suppression motion.

**C. The Wisconsin Court of Appeals' decision**

Tucker appealed the postconviction court's decision to the Wisconsin Court of Appeals, but challenged only the postconviction court's decision on standing, arguing that because he spent the night at Coleman's apartment and was permitted to do so, he was an overnight guest entitled to challenge the legality of the scope of the apartment's search. He further asked the appellate court to remand the case to the circuit court for another evidentiary hearing, this time to readdress the legality of the search, the admissibility of the evidence derived from it, and the question whether his counsel's failure to file a motion to suppress constituted ineffective assistance of counsel.

Declining to address the standing issue, the Wisconsin Court of Appeals affirmed Tucker's conviction, holding instead that the circuit court "correctly concluded that Tucker failed to show that he would not have pleaded guilty, even if a motion to suppress had

7

been successfully filed." *State v. Tucker*, No. 2016AP542-CR, 2017 WL 2349138, ¶ 12 (Wis. Ct. App. May 31, 2017); (Dkt. #9-5, at 4). Thus, the court concluded, because Kohn's failure to file a suppression motion was not prejudicial, he was not ineffective. Tucker attempted to appeal this ruling, but the Wisconsin Supreme Court denied his petition for review. He filed his habeas petition in October 2018.

ANALYSIS

In this court, Tucker again argues that his conviction should be vacated because he received ineffective assistance of trial counsel in violation of his rights under the Sixth Amendment to the U.S. Constitution. Specifically, he argues that if defense counsel had moved to suppress the fruits of the nonconsensual portion of the apartment search, the state would have had little evidence on which to pursue Tucker as a suspect, and he would not have pleaded guilty and instead would have insisted on going to trial.

To succeed on his habeas petition, Tucker must show that he is in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). Because the Wisconsin Court of Appeals addressed the merits of Tucker's ineffective assistance of counsel claims, the scope of this court's review is subject particularly deferential under 28 U.S.C. § 2254(d)(1). Under § 2254(d)(1), the court may not grant relief unless Tucker shows that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." A decision is contrary to clearly established federal law "if the rule the decision applies differs from governing law set forth in Supreme Court cases." *Bailey v. Lemke*, 735

F.3d 945, 949–50 (7th Cir. 2013) (citations omitted). A decision involves an unreasonable application of Supreme Court precedent "if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Id.*

Alternatively, Tucker can obtain relief if he shows that the state court's adjudication of his claims was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Again, however, the federal court owes deference to the state court, especially to its underlying state court findings of fact and credibility determinations, which are all presumed correct unless the petitioner comes forth with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014); *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013).

Tucker argues that the Wisconsin Court of Appeals' decision in this case was contrary to and involved an unreasonable application of federal law. First, he argues that the Wisconsin Court of Appeals applied the wrong standard for analyzing his ineffective assistance of counsel claim. Because Tucker pleaded guilty, the controlling federal standard is found in *Hill v. Lockhart*, 474 U.S. 52 (1985). To establish that trial counsel rendered ineffective assistance in advising him to plead guilty under *Hill*, Tucker must show: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. However, a guilty plea "should not lightly be withdrawn," *United States v. Brown*, 973 F.3d 667, 715 (7th Cir. 2020), and courts must "not upset a plea solely because of post hoc assertions from a defendant about

9

how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Here, the Wisconsin Court of Appeals resolved Tucker's claim on the prejudice prong. But Tucker argues that in doing so, the appellate court held him to a stricter standard than the "reasonable probability" standard, and instead required him to show that he *would not have* pleaded guilty. For a number of reasons, Tucker's argument is not persuasive. The Wisconsin Court of Appeals identified the correct standard in its decision, citing *Hill* and stating that, "to show prejudice in the context of a request for plea withdrawal, a defendant must demonstrate 'that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Tucker*, 2017 WI App 41, ¶ 9. Tucker is correct that, in subsequent paragraphs, the court failed to include the "reasonable probability" language, stating only that "Tucker failed to show that he would not have pleaded guilty, even if a motion to suppress had been successfully filed." *Id.* at ¶ 12. However, the Seventh Circuit has instructed that, "where a state court properly identifies the standard, its later failure to include language such as the 'reasonable probability' limitation will not be deemed to evidence the application of a wrong standard, but instead will be interpreted to constitute merely a shorthand reference to the correct standard." *Dunn v. Neal*, 44 F.4th 696, 703 (7th Cir. 2022) (citing *Olvera v. Gomez*, 2 F.4th 659, 671 (7th Cir. 2021); *Malone v. Walls*, 538 F.3d 744, 758 (7th Cir. 2008)). Such an approach is consistent with federal courts' deference to state courts, and the "presumption that a state court, having identified the proper standard, is then applying that proper standard in its further truncated recitation of the

10

standard." *Dunn*, 44 F.4th at 703; *see also Sussman v. Jenkins,* 636 F.3d 329, 359–60 (7th Cir. 2011) (state court opinion omitted "reasonable probability" when defining prejudice but was not contrary to *Strickland*). Therefore, the state court's failure to consistently use the correct phrasing of the prejudice standard is not, by itself, sufficient to show that the state court's decision was contrary to federal law.

The more important question is whether the state court, in dropping the "reasonable probability" language from its discussion, actually applied the correct legal standard to its analysis. This leads to Tucker's second argument: the Wisconsin Court of Appeals' decision was based on an objectively unreasonable application of federal law. Specifically, Tucker says that the court of appeals held him to a higher standard than "reasonable probability" by finding, on an inadequate record, that Tucker would have had little incentive to proceed to trial. Tucker further identifies what he says are three primary flaws in the court's analysis.

*First*, Tucker argues that the court of appeals (and postconviction court) erred in determining that a suppression motion would not have disposed of the criminal case without holding an evidentiary hearing to develop the record and evaluate the merits of the suppression motion. Tucker argues that without knowing whether the search of the apartment was illegal, the court of appeals could not determine accurately whether there was a reasonable probability that Tucker would have rejected the plea deal and insisted on going to trial. However, this argument fails because the state court of appeals assumed the *best*-case scenario for Tucker: that a motion to suppress the fruits of the apartment search would successfully result in suppression of the orange shirt, as well as Tucker's admission

11

to wearing the shirt. In doing so, the court of appeals relieved Tucker of the burden of showing that the suppression motion would have been successful and resulted in suppression of all evidence arguably outside the scope of Coleman's express consent, which even if he had standing, Tucker would have had to show to obtain relief on his ineffective assistance of counsel claim. *See Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (where an ineffectiveness claim is based on counsel's decision not to file a suppression motion, a defendant must "prove the motion was meritorious") (citations omitted).[3]

*Second*, Tucker argues that the court of appeals erred by failing to acknowledge that the suppression motion might have resulted in suppression of the positive photo lineup identification and other evidence. This argument is also unpersuasive, as Tucker insists that an evidentiary hearing is necessary to determine the reach of the suppression motion, but he has made no plausible argument that a successful motion to suppress would have conceivably resulted in exclusion of any state's evidence besides the orange shirt and his admission to wearing it. To the contrary, despite vague assertions that the photo lineup might have been suppressed, Tucker offers no reason why that would be true, such as *any*

---

[3] There are reasons why the suppression motion might *not* have been successful, including: (1) the state's argument that Tucker was not an "overnight guest," and thus, lacked standing to raise a Fourth Amendment challenge; and (2) the police might have lawfully seized the orange shirt from the closet under the "plain view" doctrine while conducting the consented to sweep of areas where a person could be hiding. *See United States v. Key*, 889 F.3d 910, 912 (7th Cir. 2018) ("While conducting [consented search for missing person], the officers could seize materials in their plain view, so long as the incriminating nature of the material was immediately apparent."). Finally, a question remains whether suppression would have been an appropriate sanction under the circumstances. *See State v. Oberst*, 2014 WI App 58, ¶ 5, 354 Wis. 2d 278, 282, 847 N.W.2d 892, 894 (suppression not always appropriate under good faith exception to exclusionary rule). However, this court will assume that the suppression motion would have been successful, as did the Wisconsin Court of Appeals.

evidence or argument that the photo lineup depended on the fruits of an even arguably illegal search and could not have been performed based on other facts known to the police.

Nor does Tucker need an evidentiary hearing to make such an argument. Tucker had access to the state's discovery and could have at least made a proffer to support his vague assertions that a suppression motion might have resulted in additional evidence being suppressed. Having failed to do so, the court of appeals concluded reasonably that even if a suppression motion may have been successful, the state would have had significant evidence connecting Tucker to the shooting, including: (1) witnesses identifying the shooter as a person who matched Tucker's physical description; (2) a witness who recognized one of the men with the shooter, and knew he had a twin brother, accounting for two of the three men involved in the altercation; (3) the victim and other eyewitnesses saying that the shooter was wearing an orange checkered shirt during the altercation that led to shots being fired; (4) a witnesses identifying Tucker as one of three men in the group of six people and the person wearing the orange shirt; and (5) Tucker's and the two brothers' presence in the apartment to which witnesses saw the suspected group flee. Tucker has made no plausible argument that any of that evidence could have been suppressed based on the motion.

*Third*, and finally, Tucker argues that he need only show that the suppression motion would have *weakened* the state's case, because this made it reasonably probable that he would have insisted on going to trial. But the state court of appeals rejected this very argument, accepting the postconviction court's finding that Attorney Kohn *had* discussed that possibility with Tucker, and he still decided to take the plea deal, knowing that his

13

prospects at trial were uncertain and that he would face *significantly* higher criminal penalties if found guilty of all of the charged offenses. Because the court of appeal's findings and analysis were not unreasonable, this court must defer to them. *See Premo v. Moore*, 562 U.S. 115, 129 (2011) ("Deference to the state court's prejudice determination [in ineffective assistance of counsel claim] is all the more significant in light of the uncertainty inherent in plea negotiations.") The court of appeals likewise accepted the postconviction court's finding that Tucker's testimony insisting that he would have gone to trial had Kohn discussed the suppression motion with him was self-serving and incredible, given the state's other evidence and the testimony at the postconviction hearing. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (emphasizing that a petitioner challenging a guilty plea must show "that a decision to reject the plea bargain would have been rational under the circumstances"). Thus, Tucker simply failed to demonstrate a reasonable probability that he would have insisted that counsel file a suppression motion and go to trial, given that he knew the same information when he elected to pursue a plea deal. *See United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021) (courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences and only allow a [plea] withdrawal if we are convinced that the defendant would have pleaded differently") (citation and internal quotations omitted). Based on the state's evidence and the testimony at the postconviction hearing, this court must accept the state court of appeals' reasonable conclusion that Tucker had not shown any reasonable probability that he would have made a different choice.

Ultimately, Tucker has not identified any basis on which this court could conclude that the Wisconsin Court of Appeals' rejection of Tucker's ineffective assistance claim was based on an unreasonable application of clearly established federal law, much less fell "well outside" the boundaries of permissible differences of opinion. *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (federal court cannot grant habeas relief unless a state court decision was "'unreasonable,' which means something like lying well outside the boundaries of permissible differences of opinion").

As a result, the only remaining question on habeas review is whether to grant Tucker a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Here, Tucker has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the United States Supreme Court. Because no reasonable jurists would debate this issue under clearly established federal law or its application to a reasonable interpretation of the facts, the court will not issue petitioner a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner James Tucker's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

2. Tucker is DENIED a certificate of appealability.

Entered this 1st day of February, 2023.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      WILLIAM M. CONLEY
                                      District Judge